Filed 1/16/25  P. v. Montano CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082529 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD274475) |
| ALFREDO MONTANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia Eyherabide, Judge.  Affirmed.

Cynthia Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Alfredo Montano and two co-defendants of first-degree murder (Pen. Code,[1] § 187, subd. (a)) in the killing of Sean Nixon. The trial court sentenced Alfredo to 25 years to life. On appeal, Alfredo's appointed counsel filed a brief raising no arguable issues and requesting that we exercise our discretion to review the record for potential issues under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*).

We have independently reviewed the record and find no arguable issue that would result in a modification or reversal of the judgment. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Alfredo's brother, Glen Montano, operated an illegal game room in the garage at his and Alfredo's house. Leaoaisemativa Sandoval worked in the game room as a money keeper. Joshua Barnum, Robert Garcia, and Vernon Ramos also worked there in different capacities. In the early morning of June 5, 2020, Glen, Alfredo, Sandoval, Barnum, Garcia, and Ramos were all in the game room at various times.

Sean Nixon arrived at the game room around 4:00 a.m. and started smoking methamphetamine. After making lewd comments to a woman sitting next to him, at around 4:38 a.m., Nixon lunged at Sandoval and attempted to take her fanny pack, which had game room cash inside. After a struggle, Glen and others took Nixon outside of the garage, but he refused to leave the premises. Nixon was believed to be a Skyline Piru gang member, and at various times that night, he referenced being a member of that gang. Glen, Barnum, and Garcia talked to Nixon outside, and at one point Alfredo

---

[1] Undesignated statutory references are to the Penal Code.

2

came outside holding a hatchet.  Around 4:50 a.m., Nixon walked back inside the game room.

Shortly after 5:00 a.m., Glen stood behind Nixon and wrapped a black strap around Nixon's neck, pulling him backwards with a quick jerk. Barnum and Alfredo both punched Nixon while he resisted.  Video footage appeared to show Alfredo standing over Nixon and kicking him while he was on the ground, after he had stopped resisting.  Ramos later laid a tarp down next to Nixon and Barnum left the garage with Nixon's cell phone in a plastic bag.  Sandoval handed Glen a trash bag and Alfredo held the strap around Nixon's neck while Glen put the bag over Nixon's head.

Later that morning, Glen, Alfredo, Barnum, and others helped move the gambling machines out of the garage.  After the incident, Sandoval and Barnum exchanged Facebook messages in which they agreed not to mention what had happened to anyone.

While executing a search warrant, law enforcement found Nixon's body inside the garage partially covered by a plastic tarp, with a black trash bag over his head and a black fabric strap wrapped around his arm and neck.  A medical examiner concluded that Nixon's cause of death was strangulation and suffocation, with blunt head trauma contributing.  Toxicology results showed that Nixon had methamphetamine, PCP, and marijuana in his system, as well as a blood alcohol content of 0.10 percent.

The People charged Glen, Alfredo, Barnum, and Sandoval with murder (§ 187, subd. (a)) and alleged that Glen and Alfredo killed Nixon by means of

lying in wait (§ 190.2, subd. (a)(15)).[2] Barnum was also charged with four counts of firearm and drug-related offenses occurring after the killing.

At trial, the prosecution relied on security camera video footage from the hours leading up to, during, and after the incident, showing various angles inside and outside of the garage. The defense's evidence included testimony about the effects the various substances in Nixon's toxicology report could have had on his behavior. The defense presented expert testimony on the Skyline Piru gang, as well as testimony from victims of Nixon's past violent and sexual behavior. The defense also called character witnesses to testify on defendants' behalf. While Barnum testified in his own defense, the other defendants did not take the stand.

The jury found Glen, Alfredo, and Barnum guilty of first-degree murder. The jury found the lying-in-wait special circumstance true as to Glen, and not true as to Alfredo. The jury deadlocked on the murder charge against Sandoval. The trial court sentenced Alfredo to 25 years to life.

DISCUSSION

Appointed appellate counsel filed a brief summarizing the facts and proceedings below, arguing no specific contentions as grounds for relief, and asking this court to review the entire record for error as mandated by *Wende, supra*, 25 Cal.3d 436. To assist the court in its review, and in compliance with *Anders, supra*, 386 U.S. 738, counsel identified numerous possible but not arguable issues, including whether: (1) sufficient evidence supported

---

[2] Alfredo filed two motions to augment the record on appeal, which we granted in part and deferred in part. As reflected in our November 22, 2023 and March 15, 2024 orders, we deferred his motion as to materials from a separate case number (SCD286423) that existed before the prosecution dismissed that case as a duplicate filing. Construing the deferred portions of Alfredo's motions to augment as requests for judicial notice, we grant those requests and have considered those materials in our review of the record.

Alfredo's first-degree murder conviction; (2) the trial court erred by instructing the jury with CALCRIM No. 357 (adoptive admissions) regarding Barnum's and Sandoval's Facebook messages; (3) the court should have instructed the jury on involuntary manslaughter as to Alfredo; (4) the court should have instructed the jury with CALCRIM No. 334 (accomplice testimony) and CALCRIM No. 301 (a single witness's testimony) regarding Barnum's testimony; (5) the court erred by allowing the jury to hear audio of Nixon's apparent death; (6) the court should have excluded certain autopsy photographs; (7) the court should have excluded video footage of what occurred after Nixon's apparent death; (8) the court erred by allowing Ramos to invoke the Fifth Amendment during an Evidence Code section 402 hearing; (9) the court erred by allowing Barnum to testify about Garcia's statements under a hearsay exception; (10) the court erred in declining to respond to a juror's question during the trial and erred in responding to the jury's question during deliberations; (11) the court should have granted Alfredo's motion to sever his case from Barnum's and Sandoval's cases; (12) the court erred by excluding evidence of Nixon's prior drug use; (13) the court should have allowed additional evidence of Nixon's character for violence under Evidence Code section 1103; (14) the prosecutor committed misconduct by shifting the burden of proof, making an improper analogy, and using video footage from after Nixon's death during closing arguments; and (15) the court erred during ex parte hearings in December 2021 and April 2023.

We invited Montano to file a supplemental brief raising any additional contentions, but he did not do so.

We have considered the potential issues identified by Montano's appellate counsel and conducted an independent review of the record for

other arguable issues under *Wende* and *Anders*.  Based on our review, we conclude there is no arguable issue that would result in a modification or reversal of the judgment.  Montano is competently represented in this appeal.  Accordingly, we affirm the judgment.  (*Wende, supra*, 25 Cal.3d at pp. 441–442.)

DISPOSITION

The judgment is affirmed.


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


RUBIN, J.